Filed 4/2/26 (unmodified opinion attached; see dissenting opinion)

**CERTIFIED FOR PUBLICATION**

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| THE MERCHANT OF TENNIS, INC., | |
| Petitioner, | E085766 |
| v. | (Super.Ct.No. CIVDS2005614) |
| THE SUPERIOR COURT OF SAN BERNARDINO COUNTY, | ORDER MODIFYING OPINION; |
| Respondent; | [NO CHANGE IN JUDGMENT] |
| JESSICA GARCIA et al., | |
| Real Parties in Interest. | |

On the court's own motion, the majority opinion filed in this matter on January 14, 2026, is modified as follows:

To the "Disposition," we add the following sentence: "Each side is to bear their own costs on appeal."

1

Except for this modification, the majority opinion remains unchanged.  The modification does not effect a change in the judgment.

MILLER _____

Acting P. J.

I concur:

CODRINGTON _____

J.

Filed 1/14/26 (unmodified opinion)

*See dissenting opinion.*

**CERTIFIED FOR PUBLICATION**


**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**


| | |
|---|---|
| THE MERCHANT OF TENNIS, INC., | |
| Petitioner, | E085766 |
| v. | (Super.Ct.No. CIVDS2005614) |
| THE SUPERIOR COURT OF SAN BERNARDINO COUNTY, | OPINION |
| Respondent; | |
| JESSICA GARCIA et al., | |
| Real Parties in Interest. | |


ORIGINAL PROCEEDINGS; petition for extraordinary writ. Tony Raphael, Judge. Petition granted.

Arentfox Schiff and John S. Purcell for Petitioner.

No appearance for Respondent.

1

Stiller Law Firm, Ariel J. Stiller-Shulman; Haines Law Group, Paul K. Haines, Sean M. Blakely, Alexandra McIntosh; Bradley/Grombacher, Marcus J. Bradley and Kiley L. Grombacher for Real Parties in Interest.

In May 2022, real party in interest Jessica Garcia (Garcia) filed a third amended consolidated class action complaint against her former employer, petitioner The Merchant of Tennis, Inc. (Merchant), for failure to pay wages in violation of various provisions of the California Labor Code, and other employment-related violations under federal and state law. In May and June 2024, Merchant entered into approximately 954 individual settlement agreements (ISAs) with employees to give up their wage and hour claims against Merchant in exchange for cash payments. Merchant paid over $875,000 in cash payments to former and current employees.

Garcia moved for class certification in May 2024. She also filed a motion to invalidate the ISAs, insisting they were obtained by Merchant through coercion and fraud. The trial court did not grant the motion to invalidate the ISAs in total but agreed that the ISAs were voidable. It ordered the parties to meet and confer regarding a curative notice to be sent to all putative class members advising that they could revoke their ISAs and join the class action lawsuit. The parties could not agree on the language of the curative notice. A hearing was held on February 28, 2025, at which the trial court ruled on the curative notice to be sent to all putative class members who had signed ISAs. The trial court ruled that the curative notice did not need to include that if the parties chose to revoke their ISAs, they may have to pay back the settlement amount if Merchant prevailed. It did advise the class members that the amount of recovery,

2

should they prevail, may be offset by the settlement payments. The trial court agreed to stay its order on the curative notice until March 31, 2025, in order for Merchant to seek review.

Merchant filed a petition for writ of mandate (Petition) asking this court to issue a peremptory writ of mandate directing the trial court to vacate its February 28, 2025, ruling; that the trial court be instructed to comply with California's rescission statutes, Civil Code sections 1689 and 1691, as part of the curative notice; that the trial court be instructed the curative notice must inform putative class members that if they revoke their ISAs to join the class action lawsuit, they are required to immediately return the settlement payment. Merchant requested a further stay of the trial court's order until the issue has been resolved by this Court, which we granted. We then issued an order to show cause why relief should not be granted.

## FACTUAL AND PROCEDURAL HISTORY

Garcia worked for Merchant from July 18, 2019, through December 31, 2019.[1] Merchant is a California corporation conducting business in San Bernardino County.

In May 2022, Garcia filed a third amended consolidated class action complaint against Merchant for failure to pay wages and give proper rest breaks in violation of various provisions of the California Labor Code, and other employment-related violations under federal and state law. She filed on behalf of herself and all other

---

[1] Two other named plaintiffs, Jose Hernandez Solis and Rudy Jimenez, worked for Merchant "from approximately April 2020 to June 2020" and "for approximately nine months through March 13, 2020" respectively.

individuals over the age of 18 who were victims of Merchant's policies and practices. On May 30, 2024, Garcia filed her motion for class certification; Merchant filed opposition to the motion on August 15, 2024. In its opposition, Merchant noted that a "substantial portion of the putative class entered into arbitration or settlement agreements," which included a class action waiver. Garcia had not entered into a settlement agreement, but 954 former and current employees had signed the ISAs.

On November 12, 2024, Garcia filed her motion to invalidate the ISAs (Motion) entered into between Merchant and 954 putative class members. The Motion asserted that Merchant had procured the agreements based on fraud and coercion. Merchant had obtained the settlements by including false statements concerning the scope of the litigation, the claims released, and the percentage employees would likely recover in a class action lawsuit. She also asserted that Merchant had coerced the class members into signing arbitration agreements after the class action complaint was filed. Merchant filed an opposition to the Motion on December 18, 2024, arguing that Garcia did not have standing to challenge the ISAs and had provided no legal basis to set aside the valid agreements. Merchant included an example of the ISAs signed by putative class members. Garcia filed a reply brief on January 8, 2025.

On January 23, 2025, the trial court partially granted the Motion, concluding that the agreements were "*voidable* at the election of each settling putative class member within 45 calendar days of the date of mailing a court-approved curative notice," because they were procured through fraud or duress. (Boldface omitted.) The court

4

also ordered the parties to send curative notices to the putative class members, but to meet and confer to decide on the language to be included in the notices.

The parties could not agree on the language to be included in the curative notice. They both provided to the trial court their own curative notice letter. Merchant sought to have the following language included: "By revoking your acceptance of the settlement agreement, you will not immediately be required to return any payment you have received from [Merchant] in exchange for your release. [¶] Should [Merchant] later be found to owe you any monies, the monies they have already paid to you through the ISA may potentially be offset against the total amount that [Merchant] ultimately owes to you. However, if you revoke your release and [Merchant] is found not to be liable in this action, you may later be required to return the monies you were paid in exchange for entering into your settlement."

The court held a hearing on the matter on February 7, 2025. At the hearing, Merchant asserted that recission principles required that the curative notice include language that notified the class members they may be required to refund Merchant the amounts they were paid as part of the individual settlements. Specifically, it asserted that the class members should be notified that, if Merchant were to successfully defend against the claims in the class action, the class members would have to return the amount they received as a part of their rescinded ISAs, and that the proposed curative notice did not adequately notify class members of that possibility. Merchant proposed that language should be included "You could also be required to refund to [Merchant] all or some of the settlement amount you received based on what happens at trial in this

5

action." It further argued that the proposed notice's omission of that language was tantamount to the court taking one million dollars from Merchant. Garcia countered that advising the putative class members that they may owe the settlement money back to Merchant would dissuade potential class members from joining the suit, that Merchant obtained the settlements fraudulently, and that the matter could be addressed at a later time. Garcia relied on the federal case of *Marino v. CACafe, Inc.* (N.D. Cal. Apr. 28, 2017) 2017 WL 1540717 (*Marino*) in which the court found that class members may have an offset for settlement amounts against the judgment but would not be required to return the payment. The parties were ordered to provide supplemental briefing.

In a supplemental brief, Merchant asserted that California recission law—Civil Code section 1691—requires immediate repayment of consideration the employees received if an agreement was rescinded. Merchant argued that the unpublished federal case of *Marino* was not on point and was not controlling authority. To the extent the case allowed employees to keep their settlement funds, this contradicted California statutory and case law. Garcia responded that the trial court should follow *Marino*. Merchant had provided no case that held a curative notice for a voidable release should include language requiring putative class members to pay back consideration. Garcia also relied on another federal case, *McClellan v. Midwest Machining, Inc.* (6th Cir. 2018) 900 F.3d 297, 308 (*McClellan*), to support her claim that the repayment of the consideration for the ISAs was not required in order to join the class action lawsuit.

6

On February 28, 2025, the trial court filed its tentative order. In its reasoning, the court first noted that neither party had presented binding California authority concerning whether the curative notices should include language requiring the class members to repay the settlement payments prior to their joining suit. The court then concluded that the notice did not need to inform the class members that they would be required to return any payments to Merchant because relevant federal case law, namely, *Marino* and *McClellan*, did not require any refund prior to the class members joining. The trial court noted that California class action law was a mixture of federal and state law. The trial court found the argument that California recission law should apply was "simplistic legal analysis," noting that the employee/employer relationship involved a higher risk of coercion and abuse than regular contracts. The trial court concluded, "In light of the following, the curative notice shall include language similar to the language in *Marino* that any amount already paid pursuant to a later-voided agreement will be treated as an offset to any other recovery by the putative class member. The Court may determine at a later date whether [Merchant] is entitled to any offset. The putative class member will not be required to return any payment they previously received from [Merchant]."

The hearing was held on February 28, 2025. Merchant insisted that the binding authority was Civil Code sections 1689 and 1691. The trial court noted that it was aware of California's rescission statutes. It stated, despite these California statutes, "in all those other federal cases there was, I'm sure, rescission statutes in the background, right.· I mean, there's always rescission." The trial court maintained that the settlement

7

agreements in the employment context were "unique." Merchant responded that the rescission statutes were not mentioned in the federal cases, and the issue of return of consideration was not brought up in the federal cases. California statutes were clear that if a contract was rescinded, the settlement money must be returned. The trial court was concerned that those employees who entered into the ISAs would not be able to pay back the money and would be discouraged from joining the class action lawsuit. Merchant argued that the purpose of the curative notice was to give the class members all of the relevant facts, not to discourage or encourage joining the class action. Garcia argued that Merchant had a remedy if they were to prevail in the lawsuit, in that they could individually sue each of those who signed an ISA. Merchant argued this made their point that the curative notice should inform the class members that they may owe the settlement money. The trial court adopted the tentative ruling.

On March 24, 2025, Merchant filed its petition for writ of mandate.

## DISCUSSION

Merchant claims the trial court erred by finding that putative class members who entered into ISAs should be allowed to keep their settlement payments if they decided to rescind their agreements. Merchant asks this court to issue a peremptory writ directing the trial court to vacate its February 28, 2025, ruling and order that the proposed class members must comply with California's rescission statutes, Civil Code sections 1689 and 1691, by immediately returning any settlement payment if they choose to rescind their ISAs and join the class action litigation.

8

Employers may obtain releases of wage claims directly from employees, and such releases bar the plaintiffs from proceeding with litigation. (*Chindarah v. Pick Up Stix, Inc.* (2009) 171 Cal.App.4th 796, 803 ["[T]here is no statute providing that an employee cannot release his claim to past overtime wages as part of a settlement of a bona fide dispute over those wages"].) This is based on the principle that " '[t]he law favors settlements.' " (*Bush v. Superior Court* (1992) 10 Cal.App.4th 1374, 1382.) The rescission of contracts is governed in California by Civil Code section 1689, subdivision (b), which provides in part, "A party to a contract may rescind the contract in the following cases: [¶] (1) If the consent of the party rescinding, or of any party jointly contracting with him, was given by mistake, or obtained through duress, menace, fraud, or undue influence, exercised by or with the connivance of the party as to whom he rescinds, or of any other party to the contract jointly interested with such party." Civil Code section 1691 provides, "Subject to Section 1693, to effect a rescission a party to the contract must, promptly upon discovering the facts which entitle him to rescind if he is free from duress, menace, undue influence or disability and is aware of his right to rescind: [¶] (a) Give notice of rescission to the party as to whom he rescinds; and [¶] (b)(1) Restore to the other party everything of value which he has received from him under the contract or offer to restore the same upon condition that the other party do likewise, unless the latter is unable or positively refuses to do so."

" '[W]hen a plaintiff seeks to rescind a settlement agreement, he must effectuate that rescission before he is free to pursue the released claim. '[P]laintiff must restore what he has received in settlement of the disputed claim before suing upon it. He

9

cannot retain the benefits of the release and sue, for to sue would violate the terms of his bargain. To hold otherwise would frustrate the very purpose of the release and destroy its effectiveness as a favored device for eliminating litigation. Hence rescission is necessary; and may be effectively accomplished only by returning the entire consideration received, for if plaintiff should fail to establish his cause of action, he would not be entitled to retain anything.' " (*Myerchin v. Family Benefits, Inc.* (2008) 162 Cal.App.4th 1526, 1535, italics omitted, disapproved of on other grounds in *Village Northridge Homeowners Association v. State Farm Fire & Casualty Co.* (2010) 50 Cal.4th 913 (*Village*).)

Civil Code section 1693[2] permits a party who is unable to restore consideration received from settlements and releases to delay such payment until final judgment, so long as the defendant shall not be substantially prejudiced by delay. (See also *Village*, *supra*, 50 Cal.4th at pp. 921, 929.) "[T]hrough section 1693, permitted plaintiffs who are unable to restore the consideration received in their original settlements and releases to delay the restoration of consideration until final judgment consistent with equitable

---

[2] Civil Code section 1693 reads as follows: "When relief based upon rescission is claimed in an action or proceeding, such relief shall not be denied because of delay in giving notice of rescission unless such delay has been substantially prejudicial to the other party. [¶] A party who has received benefits by reason of a contract that is subject to rescission and who in an action or proceeding seeks relief based upon rescission shall not be denied relief because of a delay in restoring or in tendering restoration of such benefits before judgment unless such delay has been substantially prejudicial to the other party; but the court may make a tender of restoration a condition of its judgment.

10

principles, including that defendants not be substantially prejudiced by the delay."

Tender of restoration may be a condition of the judgment. (*Id.* at pp. 928-929.)

There are no published cases directly addressing rescission of settlements, and proper curative notices in class action lawsuits. However, trial courts have broad authority and a "duty to exercise control over the class action to protect the rights of all parties, and to prevent abuse which might undermine the proper administration of justice." (See *Howard Gunty Profit Sharing Plan v. Superior Court* (2001) 88 Cal.App.4th 572, 581.)

Merchant could, and did, seek out employees and offer settlements in relation to wage and hour claims that had already accrued. (*Chindarah v. Pick Up Stix, Inc.*, *supra*, 171 Cal.App.4th at p. 803.) Moreover, based on the plain language of Civil Code section 1689, if the settlement was obtained through duress, menace, fraud, or undue influence, the employee had the option to rescind the contract and join the class action litigation. However, the party rescinding the contract, under California law, must restore what was received in settlement of the disputed claim before suing upon it. (Civ. Code, § 1691, subd. (b)(1); *Myerchin v. Family Benefits, Inc.*, *supra*, 162 Cal.App.4th at p. 1535.) Accordingly, pursuant to Civil Code sections 1689 and 1691, even if the rescission was based on fraud or duress, the putative class members would be required to repay Merchant the amount they accepted in their settlement agreements

Merchant argues that such payment should be immediate because the $900,000 paid to employees would essentially be impounded during the pending litigation. However, as noted, Civil Code section 1693 provides that repayment can be delayed

11

until judgment. In light of the fact that Merchant requested below only that language be included in the notice that payment may be required at the end of the litigation, a delay until judgment seems appropriate. Merchant was concerned with notifying the employees that they may at some point need to repay the settlement amount. Merchant did not provide any evidence below of "substantial prejudice" if the repayment was delayed. As such, in this factual scenario, section 1693 statutorily requires a curative notice that repayment of the settlement amount may be required if there is a judgment in favor of Merchant.

The trial court relied on *Marino* and *McClellan* in concluding that Merchant was not entitled to repayment from those rescinding their ISAs.

In *Marino*, *supra*, 2017 WL 1540717, an employee filed a class action complaint alleging causes of action pursuant to the Fair Labor Standards Act and California state wage and hour laws against her former employer. The employer emailed putative class members release claims and offered to pay $500 for signing the releases. The email did not state that a class action lawsuit had been filed. (*Id.* at pp. *1, 5.) The district court found that the releases were invalid. It found that the employer was prohibited from "requesting any reimbursement of payments made. The Court will determine at a later date whether [the employer] would be entitled to any offset." A curative notice was to be sent to all putative class members that the releases were invalid. (*Id.* at pp. *3-4.) While this case is similar to the facts of the instant case, the court in *Marino* never discussed the impact of California's rescission statutes. Moreover, it provided no authority for its conclusion that the employer had no right to request reimbursement of

12

the payments made if it prevailed in the litigation.  The district court did not consider what would happen to the payments if the employer were to be successful, finding that it could only be offset if the class action lawsuit was successful.  The *Marino* court simply concluded that repayment was not required by the employees without citation to any controlling authority.[3]

In *McClellan*, *supra*, 900 F.3d 297, a terminated employee, who was pregnant, brought an action against her former employer to enforce her rights under Title VII of the Civil Rights Act of 1964.  She claimed that she was terminated when she advised her employer that she was pregnant.  At termination, she was told she had to sign an agreement that she would waive any past, current or future claims she had against her employer if she wanted any severance payment.  She signed the agreement under duress and the employer paid her $4,000.  (*McClellan*, at p. 300.)  She filed suit against her employer for pregnancy discrimination, and the employer responded by filing a motion for summary judgment, contending that the severance agreement barred any claim by her.  The employer also argued that the "tender-back doctrine" barred her claims as she had not returned the severance payment prior to filing her lawsuit.  The trial court granted summary judgment, finding that the tender-back doctrine required that " 'even if a party signs a release under duress, she must "as a condition precedent to suit, . . .

---

[3] We do note that the decision in *Marino* involved void agreements, while in this case the trial court found that ISAs were "voidable."  We express no opinion if the opt-out agreements are all found invalid.

return the consideration in exchange for a release." ' " The employee filed an appeal. (*Id.* at pp. 300-302.)

The Sixth Circuit concluded, after reviewing several cases including *Hogue v. Southern R.R. Co.* (1968) 390 U.S. 516 (*Hogue*), "we worry that requiring recently-discharged employees to return their severance before they can bring claims under Title VII and the EPA would serve only to protect malfeasant employers at the expense of employees' statutory protections at the very time that those employees are most economically vulnerable. We therefore hold that the tender-back doctrine does not apply to claims brought under Title VII and the EPA." It also found, relying on *Hogue*, that any payment made to the employee would be offset against any award. (*McClellan*, *supra*, 900 F.3d at p. 308.) As such, it carved out an exception to the tender-back rule, finding it did not apply to lawsuits brought pursuant to Title VII and the EPA.

This case involves California's wage and hour laws and does not involve cases under the limited exception carved out in *McClellan*. In *Hogue*, *supra*, 390 U.S. 516, the United States Supreme Court decided that an employee who was injured at work did not have to return the consideration he received for entering into a release prior to filing an action under the Federal Employee's Liability Act. It found that "[I]t is more consistent with the objectives of the Act to hold, as we do, that it suffices that, except as the release may otherwise bar recovery, the sum paid shall be deducted from any award determined to be due to the injured employee." (*Id.* at p. 518.) This case did not involve a class action lawsuit on wages and rest breaks and did not address what would happen if the employer was successful in the litigation. Moreover, in both *McClellan*

14

and *Hogue*, the courts did not discuss what would happen to the payment of consideration if the employer was successful, and provided no authority that the employer was not entitled to reimbursement if successful in the litigation.

Neither *Moreno* nor *McClellan* discussed or analyzed the relevance of California's rescission statutes. In *McClellan*, the court examined federal claims under Title VII, brought by an individual plaintiff, not a class action. Additionally, it did not address what would happen to the payment of consideration if the employer was successful. (*McClellan*, *supra*, 900 F.3d at pp. 299, 308-309.) Moreover, while the court in *Marino* prohibited the defendant company from requesting reimbursement of payments made to putative class members, it did not resolve any question concerning rescission nor actually forewarn the putative class members of the effect of any rescission statutes. (*Marino*, *supra*, 2017 WL 1540717 at p. *8.)

California's relevant recission statutes do not prevent Merchant, if Merchant was successful in the litigation, from seeking to be paid back the consideration it paid to class members who decided to rescind their ISAs and join the class action lawsuit. We note there is some language in section 1692 which states, "[i]f in an action or proceeding a party seeks relief based upon rescission, the court may require the party to whom such relief is granted to make any compensation to the other which justice may require and may otherwise in its judgment adjust the equities between the parties," which Garcia has argued gives the trial court the ability to forgive any repayment at the outset of the proceedings based on equity, except for the offset of the money from the judgment. Garcia presented some evidence to the trial court that it would be difficult

15

for some of the class members to pay back the settlement amount, and it may deter them from joining the lawsuit.

However, the plain language in the statute only discusses this equity principle at the time of judgment. This is further shown by the language in section 1693, which gives the trial court the ability to postpone the restoration of benefits "before judgment" but allows the trail court to make "tender of restoration a condition of its judgment." It seems prudent, rather than the trial court at the outset of this class action lawsuit, to forgive almost $900,000 in payments to employees, to consider the repayments at the time of judgment taking into account equity principles. While we acknowledge Garcia's concern that some employees may be discouraged from joining the class action lawsuit, the plain language of the rescission statutes do not authorize the trial court to forgive repayment at the outset of the litigation.

Therefore, the curative notice should include language that if a class member chooses to rescind their ISA, they could be responsible for repayment of the consideration to Merchant at the conclusion of litigation pursuant to Civil Code sections 1689, 1691 and 1693, though the trial court maintains discretion to adjust the equities between parties under section 1692 at the time of judgment.[4] The dissent contends the trial court could order that the repayment of the settlement funds was not required at the beginning of the case despite the tender-back clause of section 1691, subdivision (b).

---

[4] Section 1692 provides in pertinent part, "If in an action or proceeding a party seeks relief based upon rescission, the court may require the party to whom such relief is granted to make any compensation to the other which justice may require and may otherwise in its judgment adjust the equities between the parties."

We agree that pursuant to section 1693, repayment can be delayed until the end of the litigation, and further, under section 1692, the trial court maintains discretion to adjust the equities between the parties. However, the proper interpretation of the statutes is that the equities should be considered at the conclusion of the litigation. The dissent has failed to make a reasonable argument that the trial court could forgive the repayment in total of the settlement funds at the beginning of the litigation under the current language of sections 1691, 1692 and 1693.

Further, the dissent insists that the majority has misinterpreted the plain language of section 1692 by concluding that the exercise of such equities should not be considered until the time of judgment. The dissent states that section 1692 "authorizes a trial court to adjust the equities 'in its judgment' but does not require the decision to be made at the time of judgment." The dissent contends that we improperly construe the statute as requiring that the equities be considered "at" the time of judgment rather than "in" its judgment. This is a distinction without a difference. Judgment is defined as "[a] court or other tribunal's final determination of the rights and obligations of the parties in a case." (Black's Law Dictionary (12th ed. 2024).) Whether section 1692 is considered to state that the equities should be considered "at" the time of judgment or "in" the judgment makes no difference. These considerations are to be made when the final determination as to the rights and obligations of the parties is made, not at the beginning of the action. We find that Merchant failed to show that it would suffer

17

"substantial prejudice" if the repayment was delayed until the end of the litigation. (Civ. Code, § 1693.)[5]

## DISPOSITION

Let a writ of mandate issue directing the Superior Court of San Bernardino County to vacate its order of February 28, 2025, and reconsider the curative notice in accordance with this opinion.

CERTIFIED FOR PUBLICATION

MILLER
Acting P. J.

I concur:

CODRINGTON
J.

---

[5] At oral argument, Merchant contended it was not given an opportunity to address section 1693. However, section 1691 clearly states that it is subject to section 1693, which Merchant argued below required repayment, and it clearly should have addressed section 1693.

[*The Merch. of Tennis v. Superior Court*, E085766]

RAPHAEL, J., dissenting.

This case requires us to consider a trial court's equitable authority to craft a remedy where a corporate defendant in a proposed class action case has used misrepresentations to convince its workers, who are putative plaintiffs, to accept payments for releasing their claims. The trial court allowed the workers to void their agreements. But the court recognized that requiring low-income workers to pay back the money before joining the class—or even warning them that they may owe repayment later—can deter workers from joining the class. That could achieve one aim of this type of employer effort, to torpedo the class action by picking off plaintiffs with settlements.

Here, the trial court addressed the wrongful corporate conduct as California federal courts have. The court ordered the workers informed that if they rescind their release and join the class, they will have to repay the money the company paid them for their release only as an offset to any recovery in the class action. Where an employer has used misrepresentations to extract settlements from employees, this is an equitable remedy. The majority holds the California Civil Code statutes governing rescission of contracts preclude it.[1] I respectfully dissent because I find no such restriction.

FACTS

The Merchant of Tennis, Inc. (Merchant) faced this lawsuit alleging an array of labor law violations. With the class certification motion pending, Merchant pulled

---

[1] Undesignated code sections herein refer to the Civil Code.

1

hundreds of its employees into mandatory meetings with management and asked them to sign settlement agreements. The employees released their claims in exchange for payments averaging about $918.

As this case comes to us, the wrongfulness of Merchant's conduct is not at issue. The trial court found voidable 954 individual settlement agreements because Merchant used "false and misleading" representations to obtain them. The court found Merchant made "baseless" representations that class members typically receive less than 40 percent of a settlement; falsely informed workers that the class action plaintiffs had dismissed certain claims; told workers that the case was in discovery without explaining that Merchant's summary judgment motion had been denied after four years of litigation; described the workers' release as limited when it released all claims; marked cover letters "confidential," suggesting the information should not be shared with class counsel; and misleadingly stated that arbitration agreements precluded participation in the action without disclosing that only 40 percent of the workers had such agreements.

Finding the agreements voidable, the trial court ordered a curative notice to the workers that corrected the misrepresentations and gave workers the option to void their individual settlement agreements and join the class.

The parties disputed what the curative notice should say about repayment of funds. Merchant asked the trial court for such language as: "You could also be required to refund to The Merchant of Tennis all or some of the settlement amount you received based on what happens at trial . . . or through motion practice." Merchant

2

argued that otherwise "it doesn't sound like they have much risk at all" if they revoke the agreement and join the class. Plaintiffs' counsel responded that when Merchant "made the decision to communicate with class members, they did so at their own peril." He said that telling "putative class members who live check to check" that "returning a thousand dollars to the Merchant of Tennis after they've already received and been taxed and now they got 750 and now they got to return 1000, that is a real . . . impediment. . . . These are people who are making just above the minimum wage here, most of them."

Finding no California law on point, the trial court followed a federal case that had ordered a curative notice stating that workers who void an agreement need not return their payment from the defendant, though it may be an offset against recovery. The trial court stated that Merchant's view that the California rescission statutes precluded that approach ignored both "the complexity of the employer/employee relationship" and the court's duty to prevent abuses that undermine the proper administration of justice. Requiring payback, the court said, would likely deter some workers from participating in the class due to their inability to repay Merchant.

The curative notice before us states that workers who void their agreements "will not be required to return any payment they previously received" from Merchant but that the amount "may . . . be treated as an offset to any other recovery."

3

ANALYSIS

A person may rescind a contract where he or she consented to it "with the connivance of the party as to whom he rescinds." (Civ. Code, § 1689, subd. (b)(1).) A contract also may be rescinded "[i]f the public interest will be prejudiced by permitting the contract to stand." (*Id*., § 1689, subd. (b)(6).) In the dispute before us about the curative notice, we assume that the court properly allowed workers to rescind their litigation releases because Merchant made misrepresentations to obtain them.

This case then presents an important question: what procedures may a court fashion to rescind contracts in this context involving employer misinformation and the public interest in deterring it. With a class certification pending, a defendant company may contact its workers in hopes of deterring them from joining the class. But courts have repeatedly addressed situations where defendants have used misinformation in doing so. (See *Guifu Li v. A Perfect Day Franchise, Inc.* (N.D. Cal. 2010) 270 F.R.D. 509, 517 [courts "have found that *ex parte* communications soliciting opt-outs, or even simply discouraging participation in a case . . . require curative action by the court"]; 2 McLaughlin on Class Actions (22nd ed. 2025) § 11:1 ["Misleading or coercive communications to putative or certified class members concerning the litigation threaten to undermine the fairness of the litigation process, the adequacy of representation, and the administration of justice generally"].) Where a company has deployed misinformation to obtain litigation releases from its workers, those workers may not have made an informed decision to forgo the class action. And if companies can benefit

4

from releases bought with misinformation, they will not be deterred from doing so.

Warning putative plaintiffs that they may owe money if they join the class action discourages participation in it. Here, the court's curative notice followed an approach used by some California federal courts and informed the workers that they may need to pay back the money only as an offset to recovery. (See *Dominguez v. Better Mortgage Corp.* (9th Cir. 2023) 88 F.4th 782 [company may not request payment back though it may be an offset]; *Marino v. CACafe, Inc.* (N.D. Cal. Nov. 9, 2017, No. 16-cv-6291 YGR) 2017 U.S. Dist. Lexis 186307 [informing employees that they would not have to pay back money, though it may be an offset]; *County of Santa Clara v. Astra USA, Inc.* (N.D. Cal. July 8, 2010, No. C 05-03740 WHA) 2010 U.S. Dist. Lexis 78312 [checks cashed to be deducted from recovery]; see also *Kirby v. Kindred Healthcare Operating, LLC* (C.D. Cal. May 1, 2020, No. 5:19-cv-00833-JLS-DFM) 2020 U.S. Dist. Lexis 146449 [stating that amount paid may be treated as an offset without stating outright that it would not otherwise be paid back]; *Cheverez v. Plains all American Pipeline, LP* (C.D. Cal. Mar. 3, 2016, No. CV 15-4113 PSG (JEMx)) 2016 U.S. Dist. Lexis 27818 [leaving open the possibility that amount paid will be treated as an offset without stating outright that it would not otherwise be paid back].)

The trial court explained the reason for its approach, which was grounded in the "context of [the] employer-employee relationship" where some courts have "found it inequitable" to require an employee who signed an invalid release repay the money to exercise his or her rights. It quoted *Oubre v. Entergy Operations, Inc.* (1998) 522 U.S.

5

422, 427, where, in an analogous context, the United States Supreme Court explained that requiring repayment from low-wage employees might mean that the employer would profit from its misconduct. The Supreme Court stated that employees may have spent the money and "lack the means" to return it, which might "tempt employers" into improper conduct "knowing it will be difficult to repay the monies." (*Ibid*.) The Supreme Court stated that it "ought not to open the door" to encouraging improper conduct in that way. Here, likewise, the trial court said, "concern over the inability of an employee (who accepted a settlement procured through incorrect means) to repay the money in order to exercise his or her right to participate in a lawsuit permeates the instant case." Preventing putative plaintiffs from voiding contracts "procured by [Merchant's] false, inaccurate, and/or misleading information unless they pay [Merchant] back would likely force some putative class members to choose between their desire to participate as a putative class member and their financial ability to repay [Merchant]. The putative class members should not have to pay the price for [Merchant's] malapropos."

Merchant argues that this remedy is forbidden under California's statutes governing the rescission of contracts, Civil Code sections 1688-1693. No case has addressed that issue. The majority, though acknowledging that employees may be discouraged from participating in the class, holds that the statutes prohibit what the trial court did in excusing repayment at the outset. (Maj. opn., *ante*, at p. 16.) Under the majority's rule, no matter how egregious a corporate defendant's misstatements to

6

convince workers to waive their claims, California law renders a court powerless to limit repayment to an offset. Instead, the court must give notice that the workers may owe money.

We need not read California law that way, and we should not. The rescission statutes empower the trial court to act equitably, authorizing the considered equitable remedy it imposed. That simple reason warrants denial of the petition.

But the interaction of the provisions in the rescission statutes is not simple, so, below, I will explain why I conclude that the majority's reading is wrong. The statutes governing the rescission of contracts, found at Civil Code sections 1688 to 1693, are an amalgam of two former causes of action (legal and equitable), demanding careful consideration of the interplay of the provisions. In section I, below, I will discuss the terms of the statutes, and in section II, I will briefly discuss the statutory history.

## I. The Rescission Statute

### A. *The Statute's Express Equitable Authority*

Civil Code section 1692 provides the trial court with the power to fashion the equitable remedy it did. The last sentence of that section provides: "If in an action or proceeding a party seeks relief based upon rescission, the court may require the party to whom such relief is granted to make any compensation to the other which justice may require and may otherwise in its judgment adjust the equities between the parties." (§ 1692.) Our Supreme Court has stated that this provision allows a party to invoke the "traditional and deep-rooted principles of courts of equity." (*Runyan v. Pacific Air*

7

*Industries, Inc*. (1970) 2 Cal.3d 304, 318 (*Runyan*).) " 'Rescission for mistake, duress, menace or undue influence . . . is a remedy by means of which a party may be relieved of the burdens and may procure restitutionary redress respecting a contract which was defective at its inception because consent was not freely or knowingly given.' " (*Id*. at p. 317, fn. 16.) "[I]n the light of section 1692 of the Civil Code[,] [e]xercising its equitable powers, the court can adjust the equities of the parties and grant such relief as will achieve substantial justice under the circumstances of the case presented to it." (*Snelson v. Ondulando Highlands Corp.* (1970) 5 Cal.App.3d 243, 258.)

Here, the trial court aptly decided how it will "adjust the equities between the parties" in any judgment. It had reasons for doing so that tracked those in the federal courts. Because Merchant made misstatements to extract releases in this employer/employee context, the trial court would not require return of the funds Merchant paid for that purpose, except as an offset to other recovery by the employee. Warning of possible repayment could deny putative plaintiffs the benefit of an informed choice to participate in the class action. It also could undermine the California class action mechanism by allowing wrongful conduct directed at undermining it to succeed. To be sure, if there is no class action recovery, then Merchant will have "lost" the money it paid for litigation releases without gaining a benefit. But Merchant engaged in wrongful conduct here. Section 1692 provides the trial court the power to act as it did.

The majority reads the "plain language" of the rescission statutes to allow equity only "at the time of judgment." (Maj. opn., *ante*, at p. 16.) It concludes a court cannot

8

forgive repayment "at the outset of the litigation," but a court can adjust the equities "under section 1692 at the time of judgment." (*Ibid*.) This is not the plain language of section 1692. The section authorizes a trial court to adjust the equities "in its judgment" but does not require the decision to be made *at the time* of judgment. The majority's construction of "in" as "at" makes a critical difference in this situation: the workers must be given notice that joining the class action means the trial court might later require them to pay. This is precisely why the trial court made its equitable decision now.

Although section 1692's words refute the majority's "plain language" reading, one might reasonably ask whether the restitution statutes, read as a whole, make the majority's conclusion the best one. The balance of this section explains why it is not.

B. *The "Tender Back" Clause*

A superficially plausible argument for why the trial court lacks the power it exercised here gives primacy to section 1691, subdivision (b), which I will call the "tender back" clause. (See maj. opn., *ante*, at p. 11.) That sentence states that to effect a rescission, a person is to restore to the other party the value he or she has received on the contract.[2] Because the tender back clause is the object of the directive word "must"

---

[2] Section 1691 reads, in full: "Subject to Section 1693, to effect a rescission a party to the contract must, promptly upon discovering the facts which entitle him to rescind if he is free from duress, menace, undue influence or disability and is aware of his right to rescind:
  (a) Give notice of rescission to the party as to whom he rescinds; and

*[footnote continued on next page]*

at the outset of section 1691, it appears mandatory if read in isolation.  But the clause also is "[s]ubject to section 1693," and that section provides that, absent prejudice, a person "shall not be denied relief because of a delay" in restoring the value.  (§ 1693.) Section 1693 also provides that the trial court "may" make a tender of restoration a condition of its judgment.  Because of section 1693, the text of the tender back clause does not foreclose the trial court from excusing repayment.  That is, section 1693 means repayment is *not* required immediately, and it states that the court "may" make repayment a condition of judgment, not that it "shall" do so.  Even without considering the equitable authority in section 1692, the tender back clause does not constrain the trial court's equitable authority to excuse repayment.

But we need not decide that point ourselves.  Our Supreme Court has held that a trial court can excuse repayment despite the tender back clause.  In *Carruth v. Fritch* (1950) 36 Cal.2d 426, 427-428 (*Carruth*) the Court considered an action for damages from a traffic accident where the plaintiff, under financial pressure, had executed a release of her damages claim for $2,000, which she claimed had been induced by false promises.  She sought to rescind that agreement and proceed on her damages claim but, unable to tender the $2,000, she invoked the court's equitable authority to adjust the

---

(b) Restore to the other party everything of value which he has received from him under the contract or offer to restore the same upon condition that the other party do likewise, unless the latter is unable or positively refuses to do so.

When notice of rescission has not otherwise been given or an offer to restore the benefits received under the contract has not otherwise been made, the service of a pleading in an action or proceeding that seeks relief based on rescission shall be deemed to be such notice or offer or both."

10

equities between the parties.  (*Id*. at pp. 428, 430.)  Despite section 1691's tender back clause, the court held that under the circumstances, "there is no legal reason for requiring [plaintiff] to restore the consideration received by her." (*Carruth*, at p. 431.)

*Carruth* therefore holds that the tender back clause does not prohibit a court from equitably excusing repayment.  That case is 75 years old, and the statute was significantly amended in 1961 after it was decided, as will be discussed in section II below.  But the statute was amended in a way that *expanded* the trial court's equitable authority, including by adding section 1692, with its express grant of equitable authority to the court.  (See *Village Northridge Homeowners Association v. State Farm Fire and Casualty Co*. (2010) 50 Cal.4th 913, 923, 928 [statutory revision "codified much of *Carruth*'s rule" and *Carruth* "remains good law"].)  *Carruth* supports, if not requires, concluding that the trial court here had the power to excuse repayment despite the tender back clause.

*Carruth* cited no source for the court's equitable authority, but its holding aligns with an equitable principle found in our Civil Code since its 1872 enactment:  "No one can take advantage of their own wrong."  (Civ. Code § 3517.)  The principle provides a backdrop for interpreting statutes that do not contradict it.  (See *Witt v. Jackson* (1961) 57 Cal.2d 57, 72 [§ 3517 qualifies Labor Code reimbursement remedies, so a negligent employer cannot benefit from them]; see also *Runyan*, *supra*, 2 Cal.3d at p. 317 [where the nonrescinding party is at fault, California cases have prevented the party from being "unjustly enriched" by requiring restitution damages to the rescinding party]; *Farina v.*

11

*Bevilacqua* (1961) 192 Cal.App.2d 681, 685 ["Where a defendant has been guilty of fraud, 'courts of equity are not so much concerned with decreeing that defendant receive back the identical property with which he parted . . . as they are in declaring that his nefarious practices shall result in no damage to the plaintiff"].)  Where a defendant has acted improperly, section 3517 bolsters *Carruth*'s conclusion that a court has equitable authority to excuse a party from tendering back value in rescinding a contract.

In any event, the Legislature's post-*Carruth* amendments to the statute confirm that equitable authority.  Now, section 1693 provides that the trial court "may" include repayment as a condition of the judgment and section 1692 grants the court power to "in its judgment adjust the equities" between the parties.  The combination of these two provisions supports what the trial court did here, that is, to determine that the judgment will not require repayment except as an offset against recovery.  (See *Neptune Society Corp. v. Longanecker* (1987) 194 Cal.App.3d 1233, 1245-1246 [holding that trial court's § 1692 authority to adjust the equities justified its decision not to restore property under § 1691].)

All these considerations show that the tender back clause does not supersede the court's section 1692 equitable authority to dispense with it.

### C.  The Statutory Alternative to the Tender Back Clause

A tender back is not required even by section 1691, despite the use of "must" in the first sentence of that section.  The last sentence of that subdivision provides an alternative for a party to seek "relief" based on rescission *without* repaying the funds:

"When notice of rescission has not otherwise been given or an offer to restore the benefits received under the contract has not otherwise been made, the service of a pleading in an action or proceeding that seeks relief based on rescission shall be deemed to be such notice or offer or both." (As will be discussed in section II, below, this provision was adapted from the former statutory equitable action for rescission, which had no tender back requirement.)

Under this provision, a person seeks relief based on rescission of a contract without returning the funds received but by serving a pleading in court. This is in substance what the trial court authorized in this case, though in the context of an existing class action. Putative plaintiffs can opt to join the class action, the equivalent of serving a pleading declaring that the employee wishes to rescind the contract with Merchant. The equitable relief has been determined by the court: they can rescind their release, participate in the class action, and they may owe the value received as an offset against later recovery. The last of section 1691 thereby confirms that repayment is not always essential, as the "must" clause applying to the first sentence might superficially indicate.

## II. The Former Equitable Action for Rescission

An understanding of the 1961 amendments to our rescission statute underscores why the tender back clause should not be read to foreclose the equitable authority the trial court exercised here. The clause applied in an action at law but not in an action at equity. The current issue arises from an equitable claim.

13

Before 1961, sections 1689 to 1691 of the Civil Code provided for "an action to enforce a prior rescission." (Isenberg, *Statutory Changes in the Law of Rescission in California* (1968) 19 Hastings L.J. 1248, 1248 (Isenberg).) "Having rescinded the contract by his own act, the rescinding party then brought an action to enforce the out-of-court rescission." (*Runyan*, *supra*, 2 Cal.3d at p. 312.) The action was one at law, not at equity, with a jury trial right. (Isenberg, *supra*, at p. 1248.) The action did not *seek* rescission but recovery from a rescission the plaintiff had made. (See *Philpott v. Superior Court* (1934) 1 Cal.2d 512, 517 (*Philpott*) [where plaintiff had rescinded out of court, "[a] judgment of rescission in this cause would be entirely superfluous"]; *Bennett v. Superior Court* (1933) 218 Cal. 153, 162 [contract rescinded out of court and lawsuit sought "the aid of the court in securing . . . fruits of the rescission"].) Because a party could rescind a contract only for " 'one or more of the causes enumerated in section 1689,' " a plaintiff who sought to "enforce" the rescission had to prove "that he had a good right to rescind" to recover. (*McCall v. Superior Court* (1934) 1 Cal.2d 527, 538.)

In contrast, former sections 3406 to 3408 of the Civil Code provided for an equitable "action for a judicial rescission" with no jury right. (*Runyan*, *supra*, 2 Cal.3d at p. 312; Isenberg, *supra*, at p. 1248; *Woodard v. Glenwood Lumber Co.* (1915) 171 Cal. 513, 522 ["action to obtain a judicial decree of rescission" under former § 3406].) Unlike the legal action to enforce a *previous* rescission and obtain damages, this claim sought to "invoke the power of a court of equity to effect a rescission which has not theretofore been made." (*Philpott*, *supra*, 1 Cal.2d at p. 523.) The purpose of the action

14

was "specific judicial relief for the wrong giving rise to the right of rescission." (*Runyan*, at p. 312.) In addition to the reasons that a party could rescind under former section 1689, a court could declare a rescission for two more: (1) where the contract was unlawful for reasons not in its terms and the parties were not equally at fault, and (2) where the public interest would be prejudiced by letting the contract stand. (*Runyan*, at p. 312, fn. 11.)

The tender back clause in section 1691 was a requirement of the legal action, as it described what a party had to do to rescind out-of-court before the lawsuit. But the requirement was nowhere in former sections 3406 to 3408 as it was not a requirement for an equitable action seeking rescission. As our Supreme Court put it, equitable rescission was accomplished by " 'decree of the court,' " but for " 'legal rescission. . .the act of plaintiff in avoiding the contract reinvests him with his legal title or right to sue, and must therefore be accompanied with restitution of the thing received by him.' " (*McCall v. Superior Court* (1934) 1 Cal.2d 527, 535; see *Rosemead Co. v. Shipley Co.* (1929) 207 Cal. 414, 422 [no tender of funds needed to sue "in equity where fraud is the basis of the claim"].) Instead, former section 3408 granted court discretion as whether to require restoration: " 'On adjudging the rescission of a contract, the court may require the party to whom such relief is granted to make any compensation to the other which justice may require.' " (*Gentry v. Kelly Kar Co.* (1961) 193 Cal.App.2d 324, 337 [quoting § 3408].)

15

To be sure, a court's equitable remedy in declaring a rescission might typically include requiring a tender back from the plaintiff. But it did not need to do so. (See, e.g., *Rosemead Co. v. Shipley Co.*, *supra*, 207 Cal. at pp. 420-421 ["exceptions" to the tender back requirement "have been specified in actions in equity" including circumstances where "restoration cannot be made without injuriously affecting the rights of the party seeking rescission"]; *Matteson v. Wagoner* (1905) 147 Cal. 739, 744-745 [where a contract was procured by fraud, "offer to return the [$165]" was unnecessary; discretion to determine restoration was "authorized by section 3408 of the Civil Code"; and the plaintiffs could keep the $165 even if they failed in the action].)

To "eliminate the confusing and complex duality of rescission procedures," the Legislature amended the law. (*Runyan*, *supra*, 2 Cal.3d at p. 313.) The Legislature repealed the equitable action in former sections 3406 to 3408 but meshed the content of those sections into the legal action. So it placed the broad equitable authority of former section 3408 in a new section 1692. (See *Runyan*, at p. 313.) Also, it added a new section 1693, and it added to section 1689 the two bases for rescission that had been available only in an equitable action. (Isenberg, *supra*, at p. 1249.) Further, it added the statutory alternative to the tender back clause discussed in section I.C, above. (*Id*., at p. 1255.)

Our Supreme Court in 1970 said: "We perceive in this fusing of the two former rescission procedures no intention on the part of the Legislature to disturb, much less eradicate, substantive differences theretofore underlying such procedures." (*Runyan*,

*supra*, 2 Cal.3d at p. 313.) The statute "in essence restates the equity jurisprudence applicable in the rescission context." (*Hedging Concepts, Inc. v. First Alliance Mortgage Co.* (1996) 41 Cal.App.4th 1410, 1422; *Nmsbpcsldhb v. County of Fresno* (2007) 152 Cal.App.4th 954, 963 ["if a rescission action seeking to recover something other than the consideration paid was an equitable action prior to the 1961 amendments, then it is an equitable action today"].)

We have today an equitable claim that would have been governed by section 3406 to 3408 before 1961. It seeks a judicial rescission rather than enforcement of an earlier one; it seeks cancellation of the contract and no other relief for the putative plaintiffs; it would not carry a jury right for its remedy as it simply seeks to join the class action; and it implicates the "public interest" rescission ground that formerly was only equitable. (See § 1689, subd. (b)(6).)

The tender back clause would not have applied under pre-1961 law. That clause was part of the legal action and not the equitable one. This understanding helps explain how the various parts of the current rescission statute should interact, as the Legislature did not "disturb" the "substantive differences" in the actions by amending. (*Runyan*, *supra*, 2 Cal.3d at p. 313.) The better view is that this case is governed by the court's broad equitable authority in section 1692, not by a strict tender back requirement.

Misrepresentations to putative plaintiffs in a class action differ from the contexts addressed in other California cases, but the principle does not: "case law recognizes the trial court's broad power to fashion an appropriate remedy in cases of rescission."

17

(*Sharabianlou v. Karp* (2010) 181 Cal.App.4th 1133, 1147.) As Judge Posner put it, the "spirit of equity" recognizes the need to apply "strict rules of law" so that "the spirit of the law is not sacrificed unnecessarily to the letter."[3] The majority finds a strict rule in the statute that precludes the trial court's judicious remedy here. The statute is in fact more flexible, and it should be construed to empower the trial court to ensure that wrongful acts are not rewarded. We should deny Merchant relief.

RAPHAEL

J.

---

[3] The quotation comes from *Law and Literature* (1988), in which Judge Posner addressed the role of Portia from Shakespeare's *The Merchant of Venice*, and can be found in Conter, *Eagleton, Judge Posner, and Shylock v. Antonio* (1990) 35 McGill L.J. 905, 910.